1
2
3
4
5
6                          IN THE UNITED STATES DISTRICT COURT
7
8                          FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10   TRAVELERS CASUALTY & SURETY              No. C 04-03875 WHA
     COMPANY, formerly known as THE AETNA
11   CASUALTY AND SURETY COMPANY,
12              Plaintiff,                    **ORDER DENYING
                                             CROSS-MOTIONS
13       v.                                  TO ENFORCE THE
                                             SETTLEMENT AGREEMENT
14   INSURANCE COMPANY OF THE STATE          AND VACATING HEARING**
     OF PENNSYLVANIA, NATIONAL UNION
15   FIRE INSURANCE COMPANY OF
     PITTSBURGH, PA., and DOES 1 through 10,
16
17              Defendants.
                                          /
18
19                                   **INTRODUCTION**
20          In this insurance case, the parties reached a "settlement" during mediation.  The parties
21   now make cross-motions to enforce the terms of their agreement.  Because no final, enforceable
22   settlement agreement has been executed, this order **DENIES** both motions.
23                                    **STATEMENT**
24          This dispute revolves around a previous settlement in a construction lawsuit in San
25   Francisco Superior Court, entitled *Board of Trustees of the California State University v. Perini*
26   *Building Company, et. al.*, Case No. 304093.  The parties to the above-captioned action are
27   insurers that together contributed $16.25 million to *that* settlement, with Travelers Casualty and
28   Surety Company ("Travelers") paying $12 million and National Union Fire Insurance Company
     of Pittsburgh, PA ("National Union") paying $4.25 million (*See* Usdin Exh. A).  Another

United States District Court
For the Northern District of California

1    $15.15 million was paid by various subcontractors and used to fund the repair of the damaged

2    structures (*ibid.*).  Additional funds were also deposited by Travelers and Insurance Company of

3    the State of Pennsylvania ("ICSOP") into an escrow account held by Legal Cost Consultants, to

4    pay the fees and expenses incurred by Perini in defending the underlying action (Closson Decl.

5    ¶ 6).

6           In short, plaintiff contends it paid a disproportionate share.  On September 15, 2004,

7    plaintiff filed its complaint, seeking equitable contribution from defendants with respect to both

8    the settlement itself and division of the remaining funds in the escrow account.  On

9    December 2, 2004, defendants filed their answer and counterclaims of equitable contribution,

10   equitable subrogation, and equitable indemnity.

11                                           *        *        *

12          On May 23, 2005, the parties participated in a mediation session at JAMS in Los

13   Angeles, California, at which time *this* "settlement" was reached.  Immediately following the

14   mediation session, "but still on May 23, 2005, while the parties were present," a hand-written

15   memorandum was prepared by Robert Closson, counsel for Travelers; it was signed by

16   representatives of each side, with the mutual understanding that a typed agreement finalizing

17   the settlement terms would follow (Closson Decl. ¶¶ 2–4; Schweitzer Decl. ¶¶ 2–4; Fredette

18   Decl. ¶¶ 3–6).

19          The hand-written memorandum outlines the following terms (*see* Closson Exh. 1):

20          (1)  National Union +/or ISCOP to pay to Travelers Casualty and Surety Co.
             $942,860.00 on or before September 20, 2005;

21
22          (2)  National Union +/or ISCOP to release any claim against funds remaining
             in Legal Cost Consultants Trust account totalling $519,502.69.  Travelers
             shall be entitled to immediate recovery of the entire trust account balance as
23           of May 23, 2005;

24          (3)  National Union +/or ISCOP to provide confirmation of payment of
             [$]4,250,000.00 towards the underlying action settlement;

25
26          (4)  Travelers to dismiss with prejudice its complaint in this action;

             (5)  National Union +/or ISCOP to dismiss with prejudice its counterclaim in
27           this action;

28          (6)  Each party to bear its own fees + costs.

**United States District Court**
For the Northern District of California

1   This memorandum did not indicate in any way that it was intended to be a final and enforceable

2   agreement.

3        On May 24, 2005, both sides independently submitted letters informing the Court that a

4   settlement had been reached and a stipulated dismissal was forthcoming.  In light of this

5   information, an order was issued on June 20, 2005, requesting a stipulated dismissal by June 27,

6   2005.  In the series of letters that followed, counsel for both sides indicated that they had

7   reached an impasse in finalizing the terms of their settlement and intended to file cross-motions

8   to enforce the settlement agreement.  Plaintiff filed its motion on August 26, 2005.  Defendants

9   filed their motion on September 1, 2005.  Both motions were noticed for the same hearing date.

10        The central point of controversy is whether the terms of the hand-written agreement

11  required defendants to provide "confirmation of payment" or "confirmation of *net* payment" of

12  $4.25 million towards the settlement of the underlying action.  Plaintiff contends that the parties

13  agreed during mediation that National Union should provide confirmation of its net payment,

14  meaning its actual expenditure taking into account any reimbursements received.  Its proposed

15  draft of the final settlement agreement expressly provides that the confirmation of payment

16  "shall include a copy of the cancelled check and the printout of the complete financial detail

17  information of every claim file and policy that were affected by the payment of the stated $4.25

18  million" (*See* Llaneta Exh. 2 at 3).

19        Defendants, on the other hand, assert that the cancelled check they produced was

20  sufficient to meet this condition (Fredette Exh. F).  They argue that the hand-written agreement

21  was drafted by *plaintiff's* counsel, yet failed to specify that "confirmation of *net* payment" was

22  required, such that this provision should be construed against Travelers.  Defendants further

23  accuse plaintiff of attempting to add new terms and conditions in the draft agreement that was

24  circulated on June 2, 2005.  Defendants' proposed draft of the final settlement agreement, in

25  contrast, provides that the copy of the cancelled check they produced was sufficient to satisfy

26  the "confirmation of payment" condition (*See* Llaneta Exh. 5 at 2–3).

27        Significantly, while the parties exchanged proposed drafts of the final settlement

28  agreement, *both* versions were rejected.  Thus far, no final agreement has been executed.

3

**United States District Court**
For the Northern District of California

**ANALYSIS**

Disputes regarding settlement agreements are resolved under general contract principles. *Armstrong v. Davis*, 275 F.3d 849, 876 (9th Cir. 2001). Courts may enforce only complete settlement agreements. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987).

Even a cursory review of the record reveals that no final settlement agreement was ever executed. Perhaps in an attempt to avoid the costs of litigating this action, both sides now claim that the hand-written settlement agreement prepared after the mediation session is enforceable. According to the parties, the only issue is how to interpret one of the terms. This order finds, however, that the hand-written memorandum reflects (at most) only a settlement in principle, *not* a final, enforceable settlement agreement.

This determination is supported by counsels' own representations that the hand-written agreement was never intended to be the final version, as "a full settlement and release agreement would be prepared" afterwards (Closson Decl. ¶ 4; Schweitzer Decl. ¶ 4; Fredette Decl. ¶ 6). Nowhere in the hand-written memorandum did the parties indicate that it was intended to be enforceable "as is." Indeed, this interpretation is belied by the fact that *both* sides subsequently prepared typewritten drafts to clarify and finalize the terms. Plaintiff even characterizes the hand-written memorandum as a "contingent" settlement and openly acknowledges that "[t]o date, the parties have not been able to finalize a settlement and release agreement related to this matter" (*see* Plaintiff's motion Br. 5–6). Counsel for both sides, unable to finalize the settlement agreement, apparently hold the misguided view that a bare-bones first draft will be enforced instead. Not so.

Moreover, the Court is not convinced that there was ever a meeting of the minds as to the meaning of "confirmation of payment." Plaintiff asserts that it was agreed during mediation that proof of the cancelled check would not be sufficient to meet this condition (Closson Decl. ¶ 8; Schweitzer Decl. ¶¶ 8–9). Yet, defendants argue just as vigorously that if they had been required to confirm a *net* payment of $4.25 million, they would not have been authorized to enter (and would not have entered) into *any* agreement on May 23, 2005 (Usdin Decl. ¶ 9). The reality is that this dispute over the correct interpretation of "confirmation of payment" has

**United States District Court**
For the Northern District of California

1    prevented the parties from finalizing their so-called "settlement" for nearly four months now.

2    This alone suggests that there was no settlement based on a shared understanding of what

3    "confirmation of payment" meant.  Had Mr. Closson merely included the phrase "confirmation

4    of *net* payment" in drafting the hand-written agreement, perhaps the parties might have come to

5    this realization months ago and saved themselves the effort of filing these motions.

6                                    **CONCLUSION**

7            For the aforementioned reasons, this order finds that there is no final and complete

8    settlement agreement to be enforced.  Both motions to enforce the settlement agreement are

9    **DENIED**.  The hearing on both of these motions, currently scheduled for **OCTOBER 6, 2005 AT**

10   **8:00 A.M.**, is **VACATED**.

11           In addition, the parties agree that plaintiff has already availed itself of the $519,502.69

12   in the escrow account, as provided in paragraph (2) of the hand-written agreement.

13   Accordingly, plaintiff's claims relating to equitable contribution of fees and costs for defending

14   the underlying action — *i.e.*, its first and second causes of action — are **DISMISSED WITH**

15   **PREJUDICE**.

16           Finally, the parties are reminded that all deadlines, as set forth in the case management

17   order of March 8, 2005, are still in effect.

18

19           **IT IS SO ORDERED.**

20

21   Dated:  September 23, 2005

22                                                            WILLIAM ALSUP
                                                             UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

5